# COURT OF APPEALS OF WISCONSIN
## PUBLISHED OPINION

Case Nos.:     2019AP820
                2019AP821

Complete Title of Case:

**NO. 2019AP820**

**IN RE THE TERMINATION OF PARENTAL RIGHTS TO K. T.,
A PERSON UNDER THE AGE OF 18:**

**DANE COUNTY DEPARTMENT OF HUMAN SERVICES,**

    **PETITIONER-RESPONDENT,**

  **V.**

**J. R.,**

    **RESPONDENT-APPELLANT.**

**NO. 2019AP821**

**IN RE THE TERMINATION OF PARENTAL RIGHTS TO J. T.,
A PERSON UNDER THE AGE OF 18:**

**DANE COUNTY DEPARTMENT OF HUMAN SERVICES,**

    **PETITIONER-RESPONDENT,**

  **V.**

**J. R.,**

    **RESPONDENT-APPELLANT.**

| | |
|---|---|
| Opinion Filed: | November 27, 2019 |
| Submitted on Briefs: | August 26, 2019 |

| | |
|---|---|
| JUDGES: | Fitzpatrick, P.J., Blanchard and Kloppenburg, JJ. |
|    Concurred: | |
|    Dissented: | |

| | |
|---|---|
| Appellant<br>ATTORNEYS: | On behalf of the respondent-appellant, the cause was submitted on the briefs of *Colleen Marion*, assistant state public defender of Madison. |
| Respondent<br>ATTORNEYS: | On behalf of the petitioner-respondent, the cause was submitted on the brief of *Eve M. Dorman*, deputy corporation counsel for Dane County. |

**COURT OF APPEALS
DECISION
DATED AND FILED**

**November 27, 2019**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal Nos. 2019AP820
2019AP821

Cir. Ct. Nos. 2018TP91
2018TP92

STATE OF WISCONSIN

IN COURT OF APPEALS

---

No. 2019AP820

IN RE THE TERMINATION OF PARENTAL RIGHTS TO K. T.,
A PERSON UNDER THE AGE OF 18:

DANE COUNTY DEPARTMENT OF HUMAN SERVICES,

    PETITIONER-RESPONDENT,

  V.

J. R.,

    RESPONDENT-APPELLANT.

---

No. 2019AP821

IN RE THE TERMINATION OF PARENTAL RIGHTS TO J. T.,
A PERSON UNDER THE AGE OF 18:

DANE COUNTY DEPARTMENT OF HUMAN SERVICES,

   PETITIONER-RESPONDENT,

 V.

J. R.,

   RESPONDENT-APPELLANT.

APPEALS from orders of the circuit court for Dane County: EVERETT MITCHELL, Judge. *Affirmed and cause remanded for further proceedings.*

Before Fitzpatrick, P.J., Blanchard and Kloppenburg, JJ.

¶1      FITZPATRICK, P.J.  In these consolidated appeals, J.R. appeals non-final orders of the Dane County Circuit Court.[1]  Those orders denied J.R.'s motions requesting the circuit court to rule that, in order to establish the continuing CHIPS ground for the termination of J.R.'s parental rights, the Dane County Department of Human Services (the County) must prove the elements for that

---

[1] By order dated May 13, 2019, this court granted J.R.'s petitions for leave to appeal the non-final orders and to consolidate these appeals.  *See* WIS. STAT. § 808.03(2) (2017-18).  These appeals were converted from one-judge appeals to three-judge appeals pursuant to WIS. STAT. RULE 809.41(3) (2017-18).

ground set forth in WIS. STAT. § 48.415(2)(a) (2015-16) rather than the elements set forth in § 48.415(2)(a) (2017-18).[2]

¶2     At the time the orders placing J.R.'s children outside the home were first entered in two CHIPS cases, WIS. STAT. § 48.415(2)(a) (2015-16) set out the elements of the continuing CHIPS ground and the orders referred to those elements.     The continuing CHIPS ground elements were changed when § 48.415(2)(a) (2015-16) was amended by 2017 Wis. Act 256, § 1.     *See* § 48.415(2)(a) (2017-18).[3]     About seven months after that amendment took effect, the County filed the petitions to terminate J.R.'s parental rights and the petitions stated the elements set forth in the amended version of the statute.

¶3     J.R. contends that the County is required to prove the elements of the prior version of WIS. STAT. § 48.415(2)(a), whereas the County contends that it is required to prove the elements of the amended version of that statute.     For the reasons set forth below, we conclude that the County is required to establish the elements for the ground of continuing CHIPS set forth in the amended version of § 48.415(2)(a).     Accordingly, we affirm the orders of the circuit court.

## BACKGROUND

¶4     The following facts are not in dispute.

---

[2] We follow the lead of the parties, and prior case law, and refer to that statutory subpart as the "continuing CHIPS" ground for the termination of parental rights (TPR).     *See, e.g. St. Croix Cty. DHHS v. Michael D.*, 2016 WI 35, ¶1, 368 Wis. 2d 170, 880 N.W.2d 107.     We also note that "CHIPS" stands for child in need of protection or services.     *Id.*, ¶6.

[3] For ease of reference, we will now refer to WIS. STAT. § 48.415(2)(a) (2015-16) as the "prior version," and to § 48.415(2)(a) (2017-18) as the "amended version."     References to all other statutes are to the 2017-18 version.

¶5     In May 2017, the circuit court entered CHIPS case orders placing J.R.'s children, K.T. and J.T., outside the home.  Written notice of potential grounds for termination of J.R.'s parental rights was provided to J.R. with those CHIPS case orders as required by WIS. STAT. § 48.356(2).[4]  In August 2017 and February 2018, orders continuing the children's placement outside the home were entered in the CHIPS cases.  Those orders also contained the required written notice of potential grounds for termination of J.R.'s parental rights.  *See* § 48.356(2).  Each written notice mentioned above indicated continuing CHIPS as a possible ground for termination of J.R.'s parental rights and set forth the elements of that ground as stated in the prior version of WIS. STAT. § 48.415(2)(a).

¶6     On May 1, 2018, the County filed a request with the circuit court to issue orders in both CHIPS cases "to advise [J.R.] of the grounds for termination of parental rights as affected by 2017 Wis[.] Act 256."  2017 Wis. Act 256, § 1 amended, effective April 6, 2018, the prior version of WIS. STAT. § 48.415(2)(a).  The court granted the County's request and, on May 3, 2018, the court entered orders in both CHIPS cases that were identical to the previous CHIPS orders, except that the May 2018 orders set forth the revised elements for terminating

---

[4] WISCONSIN STAT. § 48.356 states in pertinent part:

> (1) Whenever the court orders a child to be placed outside his or her home … the court shall orally inform the parent or parents who appear in court … of any grounds for termination of parental rights under s. 48.415 which may be applicable and of the conditions necessary for the child … to be returned to the home ….

> (2) In addition to the notice required under sub. (1), any written order which places a child … outside the home … shall notify the parent or parents … of the information specified under sub. (1).

parental rights under the amended version of § 48.415(2)(a). With each order, J.R. was provided the statutorily required written notice of potential grounds for termination of his parental rights, which included continuing CHIPS under the amended version of § 48.415(2)(a). *See* WIS. STAT. § 48.356(2).

¶7 On November 14, 2018, the County filed petitions to terminate J.R.'s parental rights to K.T. and J.T. In each petition the County alleged continuing CHIPS as the ground for termination pursuant to the amended version of WIS. STAT. § 48.415(2)(a).[5]

¶8 In early 2019, J.R. filed motions in each TPR proceeding which, if granted by the circuit court, would have required the County to: (1) amend its petitions to allege only the continuing CHIPS ground as stated in the prior version of WIS. STAT. § 48.415(2)(a); and (2) prosecute the TPR petitions pursuant to only the prior version of the statute. *See* WIS. STAT. § 48.42(1)(c)2. (as a prerequisite to the prosecution of a TPR case, the petition must "set forth with specificity" the grounds for the proposed termination "under [§] 48.415"). The court denied J.R.'s motion. J.R. appeals.

¶9 We will mention other material facts in the following discussion.

---

[5] Involuntary TPR proceedings employ two parts. In the first phase, known as the grounds phase, the circuit court must determine whether one or more of the statutorily enumerated grounds for terminating parental rights exists. *See* WIS. STAT. § 48.424(1)(a). If grounds are shown, the court must find the parent unfit. *See* § 48.424(4); ***Tammy W-G. v. Jacob T.***, 2011 WI 30, ¶18, 333 Wis. 2d 273, 797 N.W.2d 854. If a parent is found to be unfit, the TPR moves to the second phase, known as the disposition phase, where the court must determine whether termination of the parent's parental rights is in the child's best interest. *See* ***Steven V. v. Kelley H.***, 2004 WI 47, ¶27, 271 Wis. 2d 1, 678 N.W.2d 856.

**DISCUSSION**

¶10   Before considering J.R.'s arguments, we note three preliminary matters which give context to this dispute.

**I.  Preliminary Matters.**

¶11   First, we observe that J.R. does not request dismissal of the TPR petitions with prejudice.  Rather, J.R. contends that the County must proceed under only the prior version of WIS. STAT. § 48.415(2)(a).  Accordingly, the sole issue as framed by the parties is whether the prior version, or the amended version, of the statute must be applied in these circumstances.

¶12   Second, we describe the recent statutory changes to the continuing CHIPS ground for the termination of parental rights.  The prior and amended versions of WIS. STAT. § 48.415(2)(a) set out the four elements of the continuing CHIPS ground.  The first three elements in the prior and amended versions of § 48.415(2)(a) are identical and are not at issue in this appeal.[6]

¶13   The difference between the prior version of WIS. STAT. § 48.415(2)(a) and the amended version of that statute is the fourth element.  The fourth element in the prior version of the statute required that the petitioner show that there is "a substantial likelihood that the parent [would] not meet [the]

---

[6] Both the prior and amended versions of the statute provide that the petitioner must prove that:  (1) the child has been adjudged to be in need of protection or services and placed outside the home for six months or more pursuant to one or more court orders containing the statutorily required notice of potential TPR grounds; (2) reasonable efforts were made to provide the services to the parent or child ordered by the court; and (3) the parent failed to meet the conditions established by the court in the CHIPS order for the safe return of the child to the home.  *See* WIS. STAT. § 48.415(2)(a)1.-3. (2015-16) and § 48.415(2)(a)1.-3. (2017-18).

6

conditions [established for the safe return of the child to the parent's home] within the 9-month period following the fact-finding hearing." We will refer to this as the "9-month failure to meet requirement."

¶14 Effective April 6, 2018, 2017 Wis. Act 256, § 1 eliminated the 9-month failure to meet requirement and replaced it with the following language which now constitutes the fourth element of the continuing CHIPS ground:

> [I]f the child has been placed outside the home for less than 15 of the most recent 22 months, [the petitioner must show] that there is a substantial likelihood that the parent will not meet [the] conditions [established for the safe return of the child to the parent's home] as of the date on which the child will have been placed outside the home for 15 of the most recent 22 months, not including any period during which the child was a runaway from the out-of-home placement or was residing in a trial reunification home.

WIS. STAT. § 48.415(2)(a)3. (2017-18); 2017 Wis. Act 256, §1.

¶15 Third, we describe the requirements of WIS. STAT. ch. 48 as of the time the County filed its TPR petitions and how those requirements affect our analysis. At all times pertinent to these TPR proceedings, the statute which sets forth the grounds for termination of parental rights, WIS. STAT. § 48.415, has required the following: "At the fact-finding hearing the court or jury shall determine whether grounds exist for the termination of parental rights.… Grounds for termination of parental rights *shall* be one of the following [ten separate statutory bases for termination, including continuing CHIPS, are then described]." Sec. 48.415 (emphasis added). Further, WIS. STAT. § 48.42 sets out the requirements for a termination of parental rights petition and states in relevant part that the petition "*shall set forth* with specificity … [a] statement of *the grounds* for involuntary termination of parental rights *under* [§] *48.415*." Sec. 48.42(1)(c)2. (emphasis added). Therefore, the only bases for termination of parental rights are

7

the statutory grounds enunciated in § 48.415. *See **Tammy W-G. v. Jacob T.***, 2011 WI 30, ¶18, 333 Wis. 2d 273, 797 N.W.2d 854 ("The focus of [the grounds phase] is whether the § 48.415 ground has been met ....").

¶16    As already mentioned, by the time the County filed its TPR petitions in November 2018, the prior version of WIS. STAT. § 48.415(2)(a) (including the 9-month failure to meet requirement) had been amended. The County contends, and J.R. does not dispute, that when the County filed the TPR petitions, the continuing CHIPS ground as set forth in the amended version of the statute was the only version of that ground that could form the basis of the TPR petitions pursuant to the dictates of WIS. STAT. §§ 48.415 and 48.42, as described above. In other words, the TPR petitions the County filed in November 2018 could not have alleged the continuing CHIPS ground pursuant to the prior version of § 48.415(2)(a), *and* met the explicit requirements of §§ 48.415 and 48.42 because the prior version of the statute was no longer a part of § 48.415 and no longer available to the County as a ground for the termination of J.R.'s parental rights. As a result, if we consider only the requirements of WIS. STAT. ch. 48, as that chapter existed when the County filed its TPR petitions, J.R.'s contention must fail.

¶17    J.R. advances two arguments why the above-mentioned requirements of WIS. STAT. §§ 48.415 and 48.42 do not control the question of whether the prior version or amended version of the statute must be applied in these TPR proceedings, and we discuss each in turn.

## II. The Amended Version of WIS. STAT. § 48.415(2)(a) Applies.

¶18    First, J.R. contends that, pursuant to WIS. STAT. § 990.04, the prior version of WIS. STAT. § 48.415(2)(a) must be applied in this case. Second, J.R.

challenges the circuit court's orders on a ground separate from the argument based on § 990.04 and asserts that applying the amended version of § 48.415(2)(a) in his TPR proceedings is a retroactive application of the amended version of the statute, that retroactive application is unconstitutional as applied to him, and the prior version of the statute must govern these TPR proceedings to cure the constitutional violation. We reject J.R.'s arguments.

### A. WISCONSIN STAT. § 990.04 Does Not Require Application of the Prior Version of the Statute.

¶19    J.R. contends that, pursuant to WIS. STAT. § 990.04, the County must proceed under the prior version of WIS. STAT. § 48.415(2)(a).

¶20    WISCONSIN STAT. § 990.04 provides:

> *The repeal of a statute hereafter shall not remit, defeat or impair any* civil or criminal liability for offenses committed, penalties or forfeitures incurred or *rights of action accrued under such statute before the repeal thereof*, whether or not in course of prosecution or action at the time of such repeal; *but all such* offenses, penalties, forfeitures and *rights of action created by or founded on such statute*, liability wherefore shall have been incurred before the time of such repeal thereof, *shall be preserved and remain in force notwithstanding such repeal,* unless specially and expressly remitted, abrogated or done away with by the repealing statute.

9

(Emphasis added.) This issue concerns questions of statutory interpretation, and we review those questions de novo. *Milwaukee Journal Sentinel v. DOA*, 2009 WI 79, ¶14, 319 Wis. 2d 439, 768 N.W.2d 700.[7]

¶21 J.R.'s reliance on WIS. STAT. § 990.04 fails because he does not engage with the requirements of that statute. Section 990.04 states that, for a "right[] of action" to "be preserved and remain in force," in spite of the repeal of a statute, there must be a "right[] of action," and that right of action must have "accrued under such statute" before the statute was repealed. J.R. contends, for the first time in his reply brief, that the "right[] of action" in this situation is the County's continuing CHIPS termination ground. However, J.R. does not explain when that right of action allegedly "accrued." Without any contention from J.R. that an identified right of action accrued before the amendment of WIS. STAT. § 48.415(2)(a) (2015-16) in April 2018, he has not met the requirements of § 990.04 and his argument fails. We could end our analysis here, but for the sake of completeness we address J.R.'s three arguments that § 990.04 nevertheless requires the application of the prior version of § 48.415(2)(a) in these TPR proceedings.

¶22 First, J.R. contends in a one-sentence argument that WIS. STAT. § 990.04 requires that the prior version of WIS. STAT. § 48.415(2)(a) must be

---

[7] The County contends that WIS. STAT. § 990.04 does not apply in this circumstance because it concerns the "repeal of a statute" whereas 2017 Wis. Act 256 "amended" WIS. STAT. § 48.415(2)(a). We have held that § 990.04 "applies with equal force to an amendatory statute because such a statute is 'in its legal effect a repeal of those [] words.'" *State v. Hermann*, 164 Wis. 2d 269, 287, 474 N.W.2d 906 (Ct. App. 1991) (quoted source omitted). Thus, the fact that the prior version of § 48.415(2)(a) was amended, rather than repealed, does not by itself prevent § 990.04 from applying here.

applied in his TPR proceedings because the CHIPS cases "generated consequences" prior to the amendment of § 48.415(2)(a) (2015-16) by 2017 Wis. Act 256, § 1. However, J.R. does not explain what the "consequences" were, and he does not tie those "consequences" in any way to the language of § 990.04. So, we reject that argument as undeveloped. *See State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992) (we do not address arguments insufficiently developed).

¶23     Second, J.R. asserts in another one-sentence argument that the prior version of WIS. STAT. § 48.415(2)(a) must be applied to his TPR proceedings because the amended version of the statute "did not operate to undo or set aside the ongoing actions initiated by the CHIPS dispositional orders." We have difficulty understanding J.R.'s contention. This argument may rest on the proposition that the CHIPS cases concerning J.R.'s children and these TPR cases are one proceeding. However, as we will discuss below in a later section of this opinion, a CHIPS case and a TPR case are separate proceedings, and we reject this argument for that reason. *See Tammy W-G.*, 333 Wis. 2d 273, ¶18 (TPR proceeding is a two-step process that *begins* when petitioner files a petition alleging at least one of ten grounds for termination under § 48.415); *see also St. Croix Cty. DHS v. Michael D.*, 2016 WI 35, ¶17, 368 Wis. 2d 170, 880 N.W.2d 107 ("We begin by emphasizing that this is a TPR case, *not* a CHIPS case.").

¶24     Third, J.R. points to *State v. S.M.T.*, Nos. 2018AP2113, 2018AP2114 and 2018AP2115, unpublished slip ops. (WI App Jan. 29, 2019). J.R. argues that *S.M.T.* provides persuasive authority that the prior version of WIS. STAT. § 48.415(2)(a) should apply to his TPR proceedings because that was the

version in effect when the CHIPS dispositional orders concerning his children were first entered. *S.M.T.* does not assist J.R.

¶25 In *S.M.T.*, the TPR petition was filed *before* the effective date of the amended version of WIS. STAT. § 48.415(2)(a), and the prior version of the statute was the basis for that petition. *S.M.T.*, Nos. 2018AP2113, 2018AP2114 and 2018AP2115, ¶¶8, 11 n.2. The TPR grounds trial in *S.M.T.* occurred in the same month that the amended version of the statute went into effect. *Id.*, ¶9. In *S.M.T.*, this court observed in a footnote that, even though the amended version of § 48.415(2)(a) had recently gone into effect, the elements for the continuing CHIPS ground were evaluated under the prior version of § 48.415(2)(a) because the language from the prior version of the statute was set forth in the CHIPS orders. *S.M.T.*, Nos. 2018AP2113, 2018AP2114 and 2018AP2115, ¶11 n.3. *S.M.T.* provides no guidance here, where the TPR petitions were filed *after* the prior version of § 48.415(2)(a) was amended and after new CHIPS orders were entered setting forth the language of the amended version of § 48.415(2)(a). Moreover, no language in *S.M.T.* supports J.R.'s contention that a petitioner must prosecute a TPR under the version of the grounds statute in effect when the CHIPS orders were first entered.

¶26 In addition, the County argues that, because WIS. STAT. § 990.04 refers to "rights of action accrued under [a] statute" not being "defeat[ed] or impair[ed]," that statute does not apply in these TPR cases because § 990.04 protects only "<u>moving</u> parties (petitioners and complainants) from losing the right to proceed under a cause of action or the right to a specific remedy." *See* § 990.04. More particularly, the County asserts that § 990.04 does not protect interests of a person in J.R.'s position, that is to say, a respondent in a TPR case. J.R. replies only that "[t]he plain language of the statute carries no such

12

limitation." But, J.R. does not point this court to the "plain language" he believes refutes the County's argument, or explain this "plain language" point, and we conclude that J.R. has conceded the County's argument by not developing a response. *See Pettit*, 171 Wis. 2d at 646-47 (insufficiently developed argument need not be addressed); *Schlieper v. DNR*, 188 Wis. 2d 318, 322, 525 N.W.2d 99 (Ct. App.1994) (a proposition asserted by a respondent on appeal and not disputed by the appellant's reply may be taken as admitted).

¶27 In sum, J.R. fails to demonstrate that the provisions of WIS. STAT. § 990.04 require application of the prior version of WIS. STAT. § 48.415(2)(a) in these TPR proceedings.

## B. Application of the Amended Version of WIS. STAT. § 48.415(2)(a) is Not Retroactive.

¶28 J.R. contends that the act of the County in petitioning for termination of his parental rights based on the amended version of WIS. STAT. § 48.415(2)(a) is unconstitutional as applied to him. This is because, according to J.R., employment of the amended version of the statute is a retroactive application of that statute and, thus, violates his due process rights. In this section we explain why we conclude that J.R. fails to establish the sole predicate to his due process challenge, namely, that the County's petitioning for termination of his parental rights based on the amended version of § 48.415(2)(a) is a retroactive application of the statute. After addressing this failing, we explain additional reasons why J.R.'s due process challenge fails.

¶29 J.R.'s due process challenge involves questions of statutory interpretation and the application of a statute to undisputed facts. These are question of law that we review independently of the circuit court. *Milwaukee*

*Journal Sentinel*, 319 Wis. 2d 439, ¶14. J.R. has the burden to prove that the amended version of the statute, as applied to him, is unconstitutional beyond a reasonable doubt. *Society Ins. v. LIRC*, 2010 WI 68, ¶27, 326 Wis. 2d 444, 786 N.W.2d 385; *State v. Smith*, 2010 WI 16, ¶18, 323 Wis. 2d 377, 780 N.W.2d 90.

¶30    As stated, the sole predicate to J.R.'s constitutional argument is that, in the current posture of these cases, the amended version of WIS. STAT. § 48.415(2)(a) will be applied "retroactively." Accordingly, we must first discuss whether employing the amended version of § 48.415(2)(a) in these TPR cases is a retroactive application of that statute. *See Barbara B. v. Dorian H.*, 2005 WI 6, ¶20, 277 Wis. 2d 378, 690 N.W.2d 849. We apply a two-step analysis in determining whether employing the amended version of the statute is a retroactive application of that statute. *See Matthies v. Positive Safety Mfg. Co.*, 2001 WI 82, ¶¶16, 19, 244 Wis. 2d 720, 628 N.W.2d 842.

*1. Step 1: No Expression of Legislative Intent on Retroactivity.*

¶31    In the first step, we look to whether the legislature has expressly noted its intent that the statute be applied retroactively. *See id.*, ¶¶16-17; *see also Trinity Petroleum, Inc. v. Scott Oil Co., Inc.*, 2007 WI 88, ¶36, 302 Wis. 2d 299, 735 N.W.2d 1. If the legislature has expressed such intent, we need not reach the next step in this analysis. *Lands' End, Inc. v. City of Dodgeville*, 2016 WI 64, ¶42 (Abrahamson, J., lead), ¶140 (Zeigler, J., concurring), 370 Wis. 2d 500, 881 N.W.2d 702. The parties agree, and we concur, that the legislature did not express its intent that the amended version of WIS. STAT. § 48.415(2)(a) be applied retroactively. For that reason, this first step is not dispositive in the analysis, and we consider the second step.

### *2. Step 2:  No Retroactive Effect in These TPR Proceedings.*

¶32    The second step in the analysis requires us to determine whether the amended version of WIS. STAT. § 48.415(2)(a) actually has a retroactive effect when applied in these TPR cases.  *See **Matthies**,* 244 Wis. 2d 720, ¶19; *see also **Barbara B.**,* 277 Wis. 2d 378, ¶20.  J.R. offers two bases for his contention that there is such a retroactive effect, and we now consider each.

### *a. Interrelatedness.*

¶33    J.R. argues that there is a retroactive effect because of the "interrelatedness" of these TPR proceedings and the CHIPS cases concerning his children.  More specifically, J.R. contends that these TPR proceedings are "ancillary" to the CHIPS cases because, without the CHIPS cases, there would be no basis for the continuing CHIPS TPR ground asserted against him in these TPR proceedings.  According to J.R., the ancillary nature of these actions to the CHIPS cases requires that the prior version of WIS. STAT. § 48.415(2)(a) be applied.  The only case law for this proposition cited by J.R. is an Oklahoma opinion, ***In re L.M.**,* 276 P.3d 1088 (Okla. Civ. App. 2012).  J.R.'s reliance on ***L.M.*** fails, at a minimum, for reasons that we explain after summarizing ***L.M.***

¶34    In ***L.M.**,* an Adjudication and Disposition order regarding L.M. (the child) was entered in a "deprived child action."[8]  *Id.* at 1094, 1104.  After the entry of that order, the Oklahoma legislature amended some statutory grounds for the termination of parental rights.  *Id.* at 1096.  Subsequent to those amendments, the

---

[8] The parties appear to agree that an Oklahoma "deprived child action" is similar to a Wisconsin CHIPS action.

15

State of Oklahoma filed an "Application to Terminate" the parental rights of L.M.'s mother pursuant to one of those amended grounds. *Id.* at 1096, 1100. Consistent with Oklahoma procedural rules, the application to terminate the mother's parental rights was filed in the ongoing deprived child action. *Id.* at 1104-05. The mother's rights were terminated but, at trial, the jury was instructed on the previous version of the termination of parental rights grounds. *Id.* at 1098-1100. On appeal, an issue was whether the amended version, rather than the previous version, of the termination of parental rights ground should have been applied at the trial of her case. *Id.*

¶35 A division of the Court of Civil Appeals of Oklahoma held that the previous version of the TPR grounds statute, which was in effect when the petition that initiated the deprived child action was filed, had to be applied, rather than the amended version of the statute that was in effect when the application to terminate parental rights was filed. *Id.* at 1104-05. "[C]ontrolling" the court's analysis in *L.M.* was an Oklahoma constitutional provision which states that "repeal of a statute shall not … affect" those "proceedings begun" under a subsequently repealed or amended statute. *Id.* at 1101, 1104 (quoting OKLA. CONST. Art. 5, §54). The court in *L.M.* determined that the termination of parental rights application was part of the same case in which "proceedings [had] begun" when the deprived child action commenced. *Id.* at 1104. Therefore, the statute in effect at that earlier time applied and not the amended version of the statute. *Id.* at 1104-05.

¶36 J.R.'s argument and his reliance on *L.M.* fail because we are not bound by case law from other state courts. *See County of Fond du Lac v. Derksen*, 2002 WI App 160, ¶8, 256 Wis. 2d 490, 647 N.W.2d 922. In addition, his argument and reliance on *L.M.* also fail for at least the following two reasons.

¶37    First, J.R. does not explain why **L.M.** would be the correct result under Wisconsin law, as opposed to Oklahoma law.  J.R. does not point to a constitutional or statutory provision in Wisconsin that is similar to the controlling Oklahoma constitutional provision.  J.R. asks us to accept, without explanation, that the mere existence of the CHIPS proceedings concerning his children means that the prior version of the continuing CHIPS ground must apply in these TPR proceedings.

¶38    Second, there are material differences between Wisconsin and Oklahoma law.  The holding of the Oklahoma court in **L.M.** was based on the fact that the application to terminate was part of the deprived child action and, accordingly, the applicable Oklahoma constitutional provision controlled the result.  However, in Wisconsin, unlike in Oklahoma, CHIPS cases and TPR proceedings are separate, distinct actions.  In Wisconsin, a TPR proceeding is a two-step process that *begins* when the petitioner files a petition alleging at least one of ten grounds for termination under WIS. STAT. § 48.415.  *See* **Tammy W-G.**, 333 Wis. 2d 273, ¶18.  The filing of the petition initiates the grounds phase of the proceeding where the fact-finder determines whether a ground exists to terminate a person's parental rights.  **Id.**; **M.P. v. Dane Cty. DHS**, 170 Wis. 2d 313, 324, 488 N.W.2d 133 (1992) ("The regulations and requirements applicable to CHIPS

17

proceedings … are applicable in … [TPR] proceedings *only* insofar as they are expressly made so by [§] 48.415(2).").[9]

¶39    Thus, the present TPR proceedings began when the County filed the petitions to terminate J.R.'s parental rights to K.T. and J.T. in November 2018, and not when the CHIPS actions were commenced in May 2017.  As a result, the purported "interrelatedness" of these TPR proceedings and the CHIPS actions does not provide a basis to conclude that the amended version of WIS. STAT. § 48.415(2)(a) has a retroactive effect in these circumstances.[10]

¶40    Finally, and separately from his reliance on Oklahoma law, J.R. raises for the first time in his reply brief an argument on "interrelatedness" based on initial applicability dates included in two previous amendments to WIS. STAT. § 48.415(2)(a)3., the TPR grounds, in 1993 and 2005.  We reject this argument

---

[9] We also note that subsequent authority from Oklahoma comes to a conclusion contrary to the determination in *In re L.M.*, 276 P.3d 1088 (Okla. Civ. App. 2012), and holds that the statutory termination ground in effect at the time of the filing of an application to terminate parental rights, rather than a prior statute in effect on the date of the filing of the deprived child action, governs the termination proceeding.  *See In re J.S.*, 427 P.3d 1078, 1085-86 (Okla. Civ. App. 2018).

Indeed, in *J.S.*, the Oklahoma Court of Civil Appeals observes that this issue about whether a prior version of a statutory parental termination ground is employed in an application to terminate parental rights is not settled under Oklahoma law because various divisions of that court have come to contrary conclusions.  *Id.* at 1084-85 and n.11, 15.  The unsettled nature of this issue in the Oklahoma courts undercuts J.R.'s reliance on *L.M.*

[10] J.R. also contends, briefly, that this court "recognized the interrelatedness" of a continuing CHIPS TPR proceeding and a CHIPS action in *State v. S.M.T.*, Nos. 2018AP2113, 2018AP2114 and 2018AP2115, unpublished slip ops. (WI App Jan. 29, 2019).  This court did no such thing.  As discussed above, *S.M.T.* observed that the TPR petition was filed before the amended version of the statute became effective.  That observation in *S.M.T.* was not accompanied by any analysis or conclusion that provides guidance in these circumstances.  *See* ¶¶24-25, above.

because it is raised for the first time in J.R.'s reply brief, and the County has not had an opportunity to address the argument. *See **Richman v. Security Savings & Loan Ass'n***, 57 Wis. 2d 358, 361, 204 N.W.2d 511 (1973) (we need not address issues or arguments raised for the first time in a reply brief). In addition, we reject this argument because the applicability provisions regarding previous statutory amendments have no relevance here in light of the fact that the legislature did not employ those initial applicability provisions in the amendment of § 48.415(2)(a) in 2018.

¶41     In sum, J.R. fails to show that employing the amended version of WIS. STAT. § 48.415(2)(a) will retroactively apply that statute based on the purported "interrelatedness" of CHIPS cases and TPR proceedings.

*b. Vested Right.*

¶42     J.R. next argues that he has a "vested right" to parent his children, that right is disturbed by application of the amended version of WIS. STAT. § 48.415(2)(a) and, as such, there is a retroactive effect. We are not persuaded by this argument for numerous reasons.

¶43     Before addressing the merits of J.R.'s argument, we note that J.R. did not argue in the circuit court that he has any vested right. J.R.'s only mention of a "vested right" in his motion, briefing, or argument in the circuit court, was a quick mention that "procedural statutes" have retroactive effect if those procedural statutes disturb "vested rights." J.R. then informed the circuit court that WIS. STAT. § 48.415(2)(a) is not a procedural statute but, rather, is "substantive." After that, the term "vested right" was not mentioned again by J.R. in the circuit court, and no mention was ever made in the circuit court that J.R. had any particular vested right, including the right to parent his children. Because J.R. made no

argument in the circuit court that he had a vested right that was disturbed by application of the amended version of the statute, we conclude that J.R. has forfeited the right to make that argument on appeal. *See **Shadley v. Lloyds of London***, 2009 WI App 165, ¶¶25-27, 322 Wis. 2d 189, 776 N.W.2d 838 ("The party alleging error has the burden of establishing, by reference to the record, that the error was raised before the [circuit] court" because the circuit court has had no opportunity to rule on the issue. (quoted source omitted)). However, even if this issue was properly preserved for review, it fails for at least the following reasons.

¶44 As noted, J.R.'s constitutional argument requires a determination that a statute, in fact, operates retroactively. A statute does not operate retroactively "simply because it is applied 'in a case arising from conduct antedating the statute's enactment.'" ***Lands' End***, 370 Wis. 2d 500, ¶¶47-48 (Abrahamson, J., lead) (quoted sources omitted); *see **id.***, ¶¶131 and 136 n.9 (Zeigler, J., concurring). Rather, germane to J.R.'s instant argument, legislation operates retroactively when the statute takes away or disturbs a vested right. *See **id.***, ¶49 (Abrahamson, J., lead), ¶¶135-36 (Zeigler, J., concurring).

¶45 "[A]n existing right of action which has accrued under the rules of the common law or in accordance with its principles is a vested property right." ***Id.***, ¶70 (Abrahamson, J., lead) (quoting ***Matthies***, 244 Wis. 2d 720, ¶22 (quoting ***Hunter v. School Dist. Gale-Ettrick-Trempealeau***, 97 Wis. 2d 435, 445, 293 N.W.2d 515 (1980))); *see **id.***, ¶137 (Zeigler, J., concurring). Vesting of a right does not occur until the right is no longer contingent. ***Id.***, ¶73 (Abrahamson, J., lead); *see **id.***, ¶137 (Zeigler, J., concurring). "But '[t]he mere expectation of a future benefit or *contingent interest* does not create a vested right.'" ***Id.***, ¶49 (Abrahamson, J., lead) (quoting 2 Norman J. Singer & J.D. Shambie Singer,

*Statutes and Statutory Construction* § 41:6, at 456-57 (7th ed. 2009)); *see id.*, ¶137 (Zeigler, J., concurring).

¶46    J.R.'s argument starts with the premise that he has a "fundamental liberty interest" in "parenting [his biological] children." J.R. then contends that this purported liberty interest is a "vested right," as that term is used in the Wisconsin retroactivity case law. However, J.R. cites only a Tennessee Supreme Court opinion, *In re D.A.H.*, 142 S.W.3d 267 (Tenn. 2004), to support his contention that his right to parent his children is a "vested right," and, as we proceed to explain, that case does not help J.R.

¶47    In *D.A.H.*, the Tennessee TPR statute was amended in a material way after a TPR action had been initiated. *Id.* at 272-73. The determination in *D.A.H.* was controlled by a provision in the Tennessee Constitution which states that "no retrospective law … shall be made." *Id.* at 273 (quoting TENN. CONST. art. 1, § 20). The Tennessee Supreme Court held that the father had a "vested right" which was impaired by the change in the TPR statute after the action had been started. *Id.* at 274-75. The pertinent vested right recognized under Tennessee law was the "fundamental right of biological parents to have the care and custody of their children." *Id.* at 274.

¶48    For several reasons we now discuss, we conclude that *D.A.H.* does not govern or inform our determination about retroactive effect. First, J.R. does not point to a Wisconsin constitutional provision similar to the Tennessee constitutional language which controlled the result in *D.A.H.* Second, J.R. does not attempt to show that the definition of "vested right" in the context used by the Tennessee Supreme Court is the same as the definition of "vested right" as used in the retroactive effect case law from the Wisconsin Supreme Court that binds our

analysis.  Third, we question whether the "vested right" of a parent recognized by the Tennessee Supreme Court is the same as the "fundamental liberty interest" of a parent recognized by the Wisconsin Supreme Court.  *See, e.g.*, *id.* at 274 (in Tennessee, a "biological parent" has the right to the "care and custody of their children"); *Tammy W-G.*, 333 Wis. 2d 273, ¶52 ("Parents *who have developed a relationship with their children* have a fundamental liberty interest in the 'care, custody, and control of their children.'" (emphasis added) (citing *Troxel v. Granville*, 530 U.S. 57, 57 (2000))); s*ee also* *Monroe Cty. DHS v. Kelli B.*, 2004 WI 48, ¶23, 271 Wis. 2d 51, 678 N.W.2d 831 (a parent with a "substantial relationship" with his or her child has a "fundamental liberty interest" in parenting).

¶49     Fourth, even if we assume that J.R. has a vested right to parent his children, J.R. does not establish that he has been deprived of that right by the application of the amended version of WIS. STAT. § 48.415(2)(a).  In other words, J.R. does not explain how or why the changes made in the amended version of the statute, in themselves, take away his purported right to parent K.T. and J.T.

¶50     Wisconsin cases concerning deprivation of a vested right all contain circumstances in which a party had a "vested property right" or "accrued right" which was lost upon, *and because of*, the passage or amendment of a statute.  *See, e.g., Matthies*, 244 Wis. 2d 734, 737-38 (plaintiff had "an accrued or vested right to recover" and a "vested property right" which was impaired by a change in the joint and several liability statute); *Neiman v. American Nat'l Prop. and Cas. Co.*, 2000 WI 83, ¶¶8, 14, 236 Wis. 2d 411, 613 N.W.2d 160 (loss of a "vested right" "that accrued before passage of" a change in a damages cap); *Martin v. Richards*, 192 Wis. 2d 156, 197, 199, 531 N.W.2d 70 (1995) (loss of a "vested right to a cause of action" based on a statutory change to a damages cap); *Hunter*, 97 Wis.

2d 435, 445 (loss of a "vested property right" upon passage of an amendment to a statute of limitations). In contrast, J.R. does not make that connection between the passage of the amendment to WIS. STAT. § 48.415(2)(a) (2015-16) in April 2018 and his purported inability to parent his children since April 2018. J.R. makes no attempt to tie the passage of the amended version of § 48.415(2)(a) to the cause of his not seeing or caring for his children. Accordingly, J.R. has not met his burden of proof that he has been deprived of a vested right, and his contention that application of the amended version of § 48.415(2)(a) would have a retroactive effect must fail. S*ee Society Ins.*, 326 Wis. 2d 444, ¶27 (the party making as an-applied challenge to the constitutionality of a statute has the burden of proof).

### C. J.R.'s Due Process Challenge Fails.

¶51 We now consider J.R.'s as-applied due process constitutional challenge to the application of the amended version of WIS. STAT. § 48.415(2)(a) in these TPR proceedings. Whether a statute, as applied, violates the challenger's constitutional rights is a question of law that this court reviews de novo. **Smith**, 323 Wis. 2d 377, ¶8.

¶52 J.R.'s due process challenge rests solely on J.R.'s contention that the amended version of WIS. STAT. § 48.415(2)(a) has retroactive application to his TPR proceeding. As explained above, the amended version of § 48.415(2)(a) does not apply retroactively in these cases. For that reason, alone, J.R.'s due process argument fails.

¶53 J.R.'s due process argument also fails because, for reasons we now discuss, J.R. has not demonstrated that application of the prior version of WIS. STAT. § 48.415(2)(a), as compared to application of the amended version of § 48.415(2)(a), would make a difference to the result in these TPR proceedings.

*See Society Ins.*, 326 Wis. 2d 444, ¶27 n.9 ("Because Society makes an as-applied challenge, not a facial challenge, 'we assess the merits of the challenge by considering the facts of the particular case in front of us, "not hypothetical facts in other situations"' and determine whether 'the challenger [] show[ed] that his or her constitutional rights were actually violated.'" (quoted sources omitted)); *see also State v. Wood*, 2010 WI 17, ¶13, 323 Wis. 2d 321, 780 N.W.2d 63 (stating that, to make a successful as-applied challenge, "the challenger must show that his or her constitutional rights were actually violated"). That is, J.R. has not shown that the County will be able to establish the continuing CHIPS ground in the TPR proceeding under the amended version of § 48.415(2)(a) but not under the prior version.

¶54 First, in briefing in this court and as discussed above, J.R. refers to purported effects of applying the amended version of the statute rather than the prior version. However, those references do not cite to the record. As well, those arguments from J.R. refer only to hypothetical facts regarding "parents." J.R. does not tie those generalized hypotheticals to evidence of his own circumstances and, as a result, those contentions cannot be a basis to support his constitutional argument.

¶55 Second, at one point in his briefing in this court, J.R. contends that, as of May 2018, he "was making significant progress toward meeting the conditions of return" of his children to the home under the prior version of the statute. That contention is accompanied by a non-specific citation to three pages of a transcript of a hearing which was held in the circuit court. But, nothing in those pages of that transcript supports J.R.'s assertion that he was making progress toward meeting any return conditions. J.R. further alleges in this court that he was

24

"close to meeting the conditions of return." However, that allegation is not accompanied by any citation to the record.

¶56 In sum, J.R. has not demonstrated that applying the amended version of the statute, as opposed to the prior version, will make a difference to the result in these TPR proceedings and has, thus, failed to show that applying the amended version of the statute will actually violate his due process rights.

¶57 For those reasons, we conclude that J.R. has failed to establish that the amended version of WIS. STAT. § 48.415(2)(a) is unconstitutional as applied to him.

## CONCLUSION

¶58 For the foregoing reasons, the orders of the circuit court are affirmed.

*By the Court.*—Orders affirmed and cause remanded for further proceedings.